**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| PLUMBERS & PIPEFITTERS LOCAL 23 U.A. HEALTH & WELFARE FUND, | ) ) ) | |
| Plaintiff, | ) ) | Case No.: 25-cv-13297 |
| vs. | ) ) | Judge: |
| | ) | Mag. Judge: |
| RICHARD BOYDEN an individual; MacCLOSKEY, KESLER & ASSOCIATES, LLC, an Illinois Limited Liability Corporation; and BLACK & JONES, LLC, an Illinois Limited Liability Corporation | ) ) ) ) ) | |
| Defendants. | ) ) | |

**COMPLAINT**

NOW COMES Plaintiff, PLUMBERS & PIPEFITTERS LOCAL 23 U.A. HEALTH & WELFARE FUND ("FUND"), by and through its attorneys, JOHNSON & KROL, LLC, complaining of Defendants, RICHARD BOYDEN ("BOYDEN"), MacCLOSKEY KESLER & ASSOCIATES, LLC ("MacCLOSKEY LAW"), and BLACK & JONES, LLC ("BLACK LAW") and alleges as follows:

**JURISDICTION AND VENUE**

1.  This action arises under Section 502(a)(3) of the Employee Retirement Income Security Act (hereinafter referred to as "ERISA"). 29 U.S.C. § 1132(a)(3). The Court has jurisdiction over the subject matter of this action pursuant to 29 U.S.C. § 1132(e)(1) and 28 U.S.C. § 1331.

2.  Venue is proper in this Court pursuant to 29 U.S.C. § 1132(e)(2) in that the FUND is administered at 625 Enterprise Dr, Oak Brook, Illinois and pursuant to 28 U.S.C. § 1391(b)(2) in that a substantial part of the events or omissions giving rise to Plaintiff's

claims occurred in the Northern District of Illinois, Eastern Division.

## PARTIES

3.    Plaintiff FUND is a fiduciary of the Plumbers & Pipefitters Local 23 U.A. Health & Welfare Plan ("Plan") and, as such, is authorized to bring this action pursuant to 29 U.S.C. § 1132(a)(3).

4.    Defendant BOYDEN is a resident of Ogle County, Illinois and is a former participant of the FUND.

5.    Defendant MACCLOSKEY LAW is an Illinois limited liability corporation with its principal place of business located in Rockford, Illinois.

6.    Defendant BLACK LAW is an Illinois limited liability corporation with its principal place of business located in Rockford, Illinois.

## FACTUAL ALLEGATIONS

7.    The FUND is a self-funded welfare benefit plan as defined in 29 U.S.C. § 1002(1) that provides, *inter alia*, medical and disability benefits to covered individuals.

8.    The Board of Trustees of the FUND adopted a Plan Document/Summary Plan Description effective January 1, 2012, and thereafter adopted 19 amendments to the Plan Document/Summary Plan Description (collectively the Plan Document/Summary Plan Description effective January 1, 2012 along with the 19 amendments shall be referred to as the "2012 Plan/SPD"), which governs the terms of benefits provided under the Plan. (A copy of the 2012 Plan/SPD is attached hereto as **Exhibit 1**).

9.    The Board of Trustees of the FUND adopted a Plan Document/Summary Plan Description effective August 1, 2018, and thereafter adopted 8 amendments to the Plan Document/Summary Plan Description (collectively the Plan Document/Summary Plan

Description effective August 1, 2018 along with the 8 amendments shall be referred to as the "2018 Plan/SPD"), which governs the terms of benefits provided under the Plan (collectively the 2012 Plan/SPD and the 2018 Plan/SPD shall be referred to as the "Plan/SPD"). (A copy of the 2018 Plan/SPD is attached hereto as **Exhibit 2**).

10.     Defendant BOYDEN was a Participant of the FUND effective May 1, 2017 through May 31, 2021 as defined by the Plan/SPD.

11.     On May 8, 2018, BOYDEN was injured as a result of motor vehicle accident that was a work-related accident (the "Injury").

12.     The FUND has expended a total of $407,033.95 in medical and disability benefits on BOYDEN's behalf related to the Injury.

13.     BOYDEN retained MACCLOSKEY LAW to pursue a claim against the tortfeasor that caused his Injury and the tortfeasor's insurance carrier, MetLife (the "Insurance Claim").

14.     BOYDEN retained BLACK LAW to pursue a Workers' Compensation claim in 2019 on his behalf against his employer, Mechanical Inc., at the Illinois Workers' Compensation Commission. The case is styled as *Boyden v. Mechanical Inc.* and was assigned Case No. 19WC005677 (the "WC Claim").

15.     Section 18.01 of the 2012 Plan/SPD provides as follows:

> "Subrogation or reimbursement rules apply if the Fund pays any benefits that arise out of an accident or sickness which results in a claim against a third party. By accepting benefits under the Plan you are agreeing to reimburse the Fund for all such expenses paid on your behalf.
>
> Under these circumstances, the Fund is entitled to full and total reimbursement of its expenditures from all third party recoveries and as such, you shall be deemed to hold the right to recovery against such party in trust for the Plan."

(2012 Plan/SPD, p. 86; **Exhibit 1**).

16.     Section 20.04 of the 2018 Plan/SPD provides as follows:

> "The Fund is entitled to 100% reimbursement of all medical and disability claims paid on your behalf and/or your Dependent's behalf, related to the Accident or Sickness, from all Third Party recoveries.
>
> The Fund's right of subrogation and reimbursement will not be reduced of affected as a result of any fault or claim on the part of you and/or your Dependent, whether under the doctrines of causation, comparative fault or contributory negligence, or other similar doctrine of law.
>
> If you and/or your Dependent receive payment from or on behalf of a Third Party for benefits paid by the Fund, you must reimburse the Fund for 100% of benefits paid under the Plan. The proceeds from the settlement or judgment must be divided as follows:
>
> A. First, the Plan has priority over all monies recovered. Accordingly, you or your representative must pay a sum sufficient to fully reimburse the Fund for 100% of benefits paid related to the Accident or Sickness. You must pay your own legal fees and other costs of litigation in connection with the recovery from a Third Party. No reductions or deductions are allowed for litigation costs, court costs, or attorneys' fees (i.e., the
>
> Common Fund Doctrine, Make Whole Doctrine, and/or any other state law affecting these rights are preempted by this Plan provision under ERISA); and
>
> B. Any remainder may be paid to you and/or your Dependent."

(2018 Plan/SPD, p. 96; **Exhibit 2**).

17.     Section 20.04 of the 2018 Plan/SPD also further provides:

> "Furthermore, if you and/or your Dependent receive payment from a Third Party for Plan benefits already received and you do not reimburse the Fund as stated above within 14 business days after receiving payment, then you will be required to pay the Fund interest on the unpaid amount at 10% per year, together with all legal and administrative costs incurred by the Trustees in pursuing action against you."

(2018 Plan/SPD, p. 96; **Exhibit 2**).

18.     Section 20.05 of the 2018 Plan/SPD provides in part as follows:

> "To the extent the Fund is required to initiate a formal proceeding against you and/or your Dependent(s) to enforce its reimbursement rights, you and/or your Dependent(s) shall also be responsible for the Fund's attorney's

fees and costs incurred. In addition, to the extent the expenses, including but not limited to attorney's fees and costs, incurred by the Fund exceed the amount you and/or your Dependent(s) recover from any Third Party or you and/or your Dependent(s) refuse or fail to reimburse the Fund from any Third Party recovery, the Fund shall have the right to withhold benefits payable to you and/or your Dependent(s) until such time that the Fund is reimbursed in full for all expenses, including but not limited to attorney's fees and costs."

(2018 Plan/SPD, p. 97; **Exhibit 2**).

19.    Section 21.01.B of the 2018 Plan/SPD provides as follows:

Subject to the provisions of the Trust Agreement, the Trustees have full and exclusive authority to determine all questions of coverage and eligibility, methods of providing or arranging for benefits and all other related matters. They have full power to construe the provisions of this Summary Plan Description/Plan Document and the terms used in this booklet. Any such determination and any such construction adopted by the Trustees will be binding upon all of the parties and beneficiaries of this Plan.

No determinations involved in or arising under the Trust Agreement or this Summary Plan Description/Plan Document will be subject to the grievance or arbitration procedure established in any Collective Bargaining Agreement between the Employers and the Union. However, this provision will not affect the rights and liabilities of any of the parties under any Collective Bargaining Agreement.

In carrying out their respective responsibilities under the Fund, the Trustees and/or their delegates have discretionary authority to interpret the terms of the Plan and to interpret any facts relevant to the determination, and to determine eligibility and entitlement to benefits in accordance with the terms of the Plan. Benefits under this Plan will be paid only if the Trustees and/or their delegates decide in their discretion that the applicant is entitled to them. Any interpretation or determination made under that discretionary authority will be given full force and effect, unless it can be shown that the interpretation or determination was arbitrary and capricious.

(2018 Plan/SPD, p. 98; **Exhibit 2**).

20.    On August 16, 2018, BOYDEN executed a Reimbursement Agreement in which he agreed

that:

"The Covered Individual does hereby agree to reimburse the Trust Fund 100% of the benefits paid on account of the Accident by the Trust Fund,

should he/she or his/her representative receive any money or other assets from any Third Party. The Trust Fund shall not, however, be entitled to receive reimbursement in excess of the amount which the Covered Individual receives from all responsible Third Parties."

(A copy of the signed Reimbursement Agreement is attached as **Exhibit 3**).

21.    In or about April 16, 2020, BOYDEN agreed to settle the Insurance Claim in exchange for payment in the amount of $70,000.00. (A copy of the Release of Lien resolving the Insurance Claim is attached as **Exhibit 4**).

22.    Following the settlement of the Insurance Claim, the FUND made a claim for reimbursement from the settlement proceeds. In response, Ms. Mary Wood of MACCLOSKEY LAW offered to hold $70,000.00 in escrow until the WC Claim developed further.

23.    The FUND agreed to allow MACCLOSKEY LAW to maintain $70,000.00 in escrow until the issue of the remaining claims paid by the FUND has been resolved.

24.    BLACK LAW brought a 19(b) Petition in the WC Claim in or about November 2019 to the Illinois Workers' Compensation Commission to resolve outstanding medical bills on behalf of BOYDEN. BLACK LAW entered an exhibit outlining the claims expended by FUND at the time of the hearing in the amount of $312,116.37.

25.    On November 11, 2019, the 19(b) Petition proceeded to hearing, and on March 9, 2020, the Arbitrator awarded a money judgment in the amount of $583,383.49 for all medical claims paid to date related to the Injury, with the amount of $312,116.37 to be awarded as a credit to FUND, and awarded temporary total disability benefits of $1,280.00 per week until the entirety of the WC Claim is resolved. (the "19(b) Award").

26.    From the date of trial (November 11, 2019) through BOYDEN's termination of eligibility for benefits under the FUND's Plan of Benefits, the FUND expended an additional

$94,917.58 in medical and disability claims related to the Injury.

27.    Thereafter, , BOYDEN's employer requested that the Illinois Workers' Compensation Commission review the 19(b) Award.

28.    On November 18, 2021 the Illinois Workers' Compensation Commission reversed the Arbitrator's 19(b) Award.

29.    Thereafter, BOYDEN appealed the Illinois Workers' Compensation Commission affirmation of the Arbitrator's 19(b) Award to the Fifteenth Judicial Circuit.

30.    On September 15, 2022, Judge Redington from the Fifteenth Judicial Circuit affirmed the Arbitrator's 19(b) Award.

31.    Further, Judge Redington, on December 6, 2022, granted BOYDEN's employer's motion to remand the matter back to the Illinois Workers' Compensation Commission.

32.    On June 12, 2023, a panel of Illinois Workers' Compensation Commission Commissioners largely affirmed the Arbitrator's 19(b) Award, aside from correcting a small calculation error made at the time of the original decision.

33.    Thereafter, BOYDEN's employer appealed the Commissioners' affirmation of the Arbitrator's 19(b) Award to the Illinois Appellate Court.

34.    On December 23, 2024, a panel of the Illinois Appellate Court affirmed the Arbitrator's 19(b) Award.

35.    Upon information and believe, BOYDEN's employer and/or the employer's insurer, paid the $583,383.49 required by the Arbitrator's 19(b) Award BOYDEN's lawyers, BLACK LAW, and BLACK LAW continues to maintain $583,383.49 paid pursuant to the Arbitrator's 19(b) Award in a client trust account.

36.    Beginning in January 2025, BOYDEN, BLACK LAW and the FUND exchanged

settlement proposals regarding the FUND's right to reimbursement but have been unable to reach a resolution.

37.  The latest offer made by BOYDEN and BLACK LAW was rejected.  Since then, the FUND has attempted to confirm that BLACK LAW continues to retain the $583,383.49 paid pursuant to the Arbitrator's 19(b) Award in a client trust account, but BLACK LAW has failed to respond to the FUND's inquiries for over a month.

38.  Upon information and belief, MACCLOSKEY LAW maintains at least $70,000.00 of settlement proceeds from the Insurance Claim in a client trust account.

39.  Upon information and belief, BOYDEN continues to receive $1,280.00 weekly from his Employer's insurance carrier.

40.  The FUND, through its attorneys and agents, has demanded full reimbursement of the $407,033.95 in medical and disability benefits that the FUND paid on BOYDEN's behalf related to the Injury, which BOYDEN and BLACK LAW have repeatedly refused. MACCLOSKEY LAW, while not having refused, has opted to not issue repayment until BLACK LAW does so.

41.  As of today's date, Defendants have refused to recognize the FUND'S absolute right to recover and power to construe the provisions of the Plan/SPD pursuant to the Plan/SPD and ERISA.

42.  Section 502(e)(1) of ERISA provides that this Court has exclusive jurisdiction to resolve the FUND's right to reimbursement.  29 U.S.C. § 1132(e)(1).

43.  Despite demanding reimbursement for the medical and disability expenses paid by the FUND to BOYDEN or on his behalf relating to the Injury, Defendants have failed to fully reimburse the FUND from the settlement proceeds.

44.    Pursuant to the Plan/SPD, the Defendants are also obligated to reimburse the FUND for attorneys' costs and fees incurred as a result of enforcing its rights under the Plan from the settlement proceeds.  (**Exhibit 1**; **Exhibit 2**).

## COUNT I –
## ENFORCEMENT OF PLAN/SPD – EQUITABLE LIEN

45.    Plaintiff incorporates by reference paragraphs 1 to 44 of the Complaint as if fully set forth herein.

46.    By refusing to reimburse the FUND the full amount of medical and disability benefits paid in the amount of $407,033.95 related to the Injury from the monies received by Defendants in the settlement of the Insurance Claim and the $583,383.49 paid pursuant to the Arbitrator's 19(b) Award in the WC Claim, Defendants have violated the terms of the Plan/SPD which clearly state that the FUND has a right to reimbursement from any and all money that Defendants recover from the Insurance Claim and WC Claim and the sole authority to construe the terms of the Plan/SPD.

47.    The FUND has an absolute right to reimbursement in the amount of $407,033.95.

48.    Upon information and belief, Defendants continue to maintain a portion of the settlement proceeds in the Insurance Claim and $583,383.49 paid pursuant to the Arbitrator's 19(b) Award in the WC Claim in client trust accounts.

49.    The FUND has been harmed as a result of the Defendants' failure to act in accordance with the terms of the Plan/SPD because the Defendants are refusing to reimburse the FUND with money that rightfully belongs to the Plaintiff and attempting to circumvent the exclusive power given to the Trustees by the terms of the SPD/Plan to interpret the Plan/SPD.

50.     Section 502(a)(3) of ERISA allows the Plaintiff to seek appropriate equitable relief to enforce the terms of the Plan/SPD.  29 U.S.C. § 1132(a)(3).


**WHEREFORE**, the Plaintiff respectfully requests that this Court:

A.      Impose an equitable lien in the amount of $407,033.95 plus interest on the settlement proceeds recovered by BOYDEN in the Insurance Claim being maintained by MacCLOSKEY LAW in its client trust accounts;

B.      Impose an equitable lien in the amount of $407,033.95 plus interest on the $583,383.49 paid pursuant to the Arbitrator's 19(b) Award recovered by BOYDEN in the WC Claim being maintained by BLACK LAW in its client trust accounts;

C.      Enter an order awarding Plaintiff its reasonable attorneys' fees and costs pursuant to the terms of the Plan/SPD and 29 U.S.C. § 1132(g)(1); and

D.      Award the Plaintiff any other equitable relief that this Court deems to be just and equitable all at Defendants' cost, pursuant to 29 U.S.C. § 1132(a)(3).


## COUNT II –
## ENFORCEMENT OF PLAN/SPD – CONSTRUCTIVE TRUST

51.     Plaintiff incorporates by reference paragraphs 1 to 50 as if fully set forth herein.

52.     By refusing to reimburse the FUND the full amount of medical and disability benefits paid in the amount of $407,033.95 related to the Injury from the monies received by Defendants in the settlement of the Insurance Claim and the $583,383.49 paid pursuant to the Arbitrator's 19(b) Award in the WC Claim, Defendants have violated the terms of the Plan/SPD which clearly state that the FUND has a right to reimbursement from any and all money that Defendants recover from the Insurance Claim and WC Claim and the sole

authority to construe the terms of the Plan/SPD.

53.     The FUND has an absolute right to reimbursement in the amount of $407,033.95.

54.     Upon information and belief, Defendants continue to maintain a portion of the settlement proceeds in the Insurance Claim and $583,383.49 paid pursuant to the Arbitrator's 19(b) Award in the WC Claim in client trust accounts.

55.     The FUND has been harmed as a result of the Defendants' failure to act in accordance with the terms of the Plan/SPD because the Defendants are refusing to reimburse the FUND with money that rightfully belongs to the Plaintiff and attempting to circumvent the exclusive power given to the Trustees by the terms of the SPD/Plan to interpret the Plan/SPD.

56.     Section 502(a)(3) of ERISA allows the Plaintiff to seek appropriate equitable relief to enforce the terms of the Plan/SPD.  29 U.S.C. § 1132(a)(3).

**WHEREFORE**, Plaintiffs respectfully request that this Court:

A.      Impose a constructive trust in the amount of $407,033.95 plus interest on the settlement proceeds recovered by BOYDEN in the Insurance Claim being maintained by MACCLOSKEY LAW in its client trust accounts;

B.      Impose a constructive trust in the amount of $407,033.95 plus interest on the settlement proceeds recovered by BOYDEN in the WC Claim being maintained by BLACK LAW in its client trust accounts;

C.      Enter an order awarding Plaintiff its reasonable attorneys' fees and costs pursuant to the terms of the Plan/SPD and 29 U.S.C. § 1132(g)(1); and

D.      Award the Plaintiff any other equitable relief that this Court deems to be just and equitable all at Defendants' cost, pursuant to 29 U.S.C. § 1132(a)(3).

<u>COUNT III –</u>
<u>ENFORCEMENT OF PLAN/SPD – EQUITABLE GARNISHMENT</u>

57.    Plaintiff incorporates by reference paragraphs 1 to 56 as if fully set forth herein.

58.    By refusing to reimburse the FUND the full amount of medical and disability benefits paid in the amount of $407,033.95 related to the Injury from the $1,280.00 per week payments being paid to BOYDEN by his employer and/or the employer's insurance company as awarded by the 19(b) Award, BOYDEN has violated the terms of the Plan/SPD which clearly state that the FUND has a right to reimbursement from any and all money that Defendants recover from the WC Claim and the sole authority to construe the terms of the Plan/SPD.

59.    The FUND has an absolute right to reimbursement in the amount of $407,033.95.

60.    BOYDEN's entitlement to the $1,280.00 per week in temporary total disability is a direct result of the Injury.  As such, the FUND has an absolute right to reimbursement in the amount of $407,033.95 from his weekly temporary total disability benefits.

61.    Accordingly, the FUND requests that this Court enter an equitable garnishment order directing a reasonable portion of the weekly benefit be paid to the FUND until the FUND is reimbursed in full.

62.    Section 502(a)(3) of ERISA allows the Plaintiff to seek appropriate equitable relief to enforce the terms of the Plan/SPD.  29 U.S.C. § 1132(a)(3).

    **WHEREFORE**, Plaintiffs respectfully request that this Court:

A.    Order the payor of BOYDEN's $1,280.00 weekly temporary total disability benefit to direct a reasonable portion of the weekly benefit to the FUND until the FUND is reimbursed in the amount of $407,033.95 plus interest;

B.      Enter an order awarding Plaintiff its reasonable attorneys' fees and costs pursuant to the terms of the Plan/SPD and 29 U.S.C. § 1132(g)(1); and

C.      Award the Plaintiff any other equitable relief that this Court deems to be just and equitable all at Defendants' cost, pursuant to 29 U.S.C. § 1132(a)(3).

Respectfully Submitted,

**PLUMBERS & PIPEFITTERS LOCAL 23 U.A. HEALTH & WELFARE FUND**

By:     /s/ Jeffrey A. Krol – 6300262
        One of the Plaintiff's Attorneys

Jeffrey A. Krol
JOHNSON & KROL, LLC
311 South Wacker Drive, Suite 1050
Chicago, Illinois 60606
(312) 757-5465
krol@johnsonkrol.com